**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,            CASE NO. 16-20062
                                        HON. DENISE PAGE HOOD
v.

D-13 RODEREK PERRY,

                Defendant.
_____/

**ORDER REGARDING VARIOUS MOTIONS**

**I.**    **Introduction and Factual Background**

Defendant is one of 14 defendants charged in a nine-count Superseding Indictment filed on July 27, 2016. Generally speaking, the Superseding Indictment alleges that a street gang, the Rollin 60s Crips, through its members, engaged in criminal activity that included multiple threats and acts of murder, robbery and arson, as well as the distribution of controlled substances, all in violation of multiple Michigan laws (M.C.L. §§ 750.316(1), 750.317, 750.157a(a), 750.92, 767.39, 750.529, 750.529a, 750.530, 750.89, 750.73), as well as 18 U.S.C. § 1951 (interference with commerce by robbery) and 21 U.S.C. §§ 841 and 846 (distribution of controlled substances). Defendant has been charged in five counts: (a) Count I, Racketeering Conspiracy ("RICO"), in violation of 18 U.S.C. § 1962(d), for his

alleged activities as part of a national street gang called the "Rollin 60s Crips," (b) Count IV - Murder in Aid of Racketeering Conspiracy, in violation of 18 U.S.C. § 1959(a)(1); (c) Count V - Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 1924(j); (d) Count VIII - Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3); and (e) Count IX - Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(j).

The conduct alleged in the Superseding Indictment covers a period from 2007 to July 2016, and the conduct related to Defendant appears to extend from 2009 through at least November 2013. As noted below, the Government also alleges it has evidence that Defendant was still trafficking drugs in January through July 2016. The Government alleges Defendant participated in at least two murders, an attempted armed robbery and threats of violence, and the sale of drugs (including marijuana and prescription drugs) and made Facebook postings regarding his criminal conduct.

Defendant has filed, and the Court addresses in this Order, seven motions and one request. Defendant's motions have been fully briefed, and the Court held a hearing on Defendant's motions March 7, 2017.

## II.   Motion for a Written Proffer and Hearing on Admissibility of Co-Conspirators Statements Under FRE 801(d) [#311]

Defendant moves the Court to hold a hearing to determine the admissibility of

co-conspirators statements the Government intends to introduce at trial and order the Government to provide a written proffer in advance of that hearing.   Rule 801(d)(2)(E) provides that the statement of a co-conspirator during the course and in furtherance of a conspiracy is not hearsay if offered against a party.   Under Rule 104, a trial court must find that the co-conspirator's statements meet the requirements of Rule 801(d)(2)(E) "[b]efore admitting the out-of-court statements of co-conspirators[.]" *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008).   Defendant seeks a written proffer by the Government at least 30 days prior to trial as to why any co-conspirator statement sought to be admitted is admissible.

Defendant relies on two Sixth Circuit cases regarding whether the Government has met its burden of having co-conspirator statements admitted at trial–and when the Court should make that determination.   A trial court must find by a preponderance of the evidence that: (1) a conspiracy existed in which Defendant was a participant; (2) the declarant and Defendant participated in the conspiracy when the hearsay statement was made; and (3) the statement was made in furtherance of the conspiracy. *United States v. Enright,* 579 F.2d 980, 985-86 (6th Cir. 1978).   In *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979), the Court held that one method for determining the admissibility of co-conspirator hearsay statements is to hold a "mini-hearing," at which the Court hears the Government's proof of conspiracy and makes a preliminary

*Enright* finding.  Alternatively, the Court could order the Government to produce the non-hearsay evidence prior to making a finding concerning admissibility of the hearsay or admit the hearsay statements subject to a later demonstration of their admissibility. *Id*. at 152-53.

The Government responds that Defendant is not entitled to the information he seeks at this stage in the proceedings (30 days before trial). Citing 18 U.S.C. § 3500 and Rule 16(a)(2).  The Government asserts that it has complied with its disclosure requirements pursuant to Rule 16, as each defendant in this case has a copy of his own statements and criminal history, and the Government has given Defendant some of the statements made by his co-conspirators, even though it was not obligated to do so pursuant to Rule 16 or case law. Citing *United States v. Preser*, 844 F.2d 1275, 1285 (6th Cir. 1988) (citation omitted) (Rule 16 does not require discovery of co-conspirator's statement).

The Government notes that the Jencks Act does not require that a co-conspirator's statements be produced to Defendant until after the co-conspirator testifies on direct examination. 18 U.S.C. § 3500(a).  One reason for that timing is to protect potential witnesses. *United States v. Roberts*, 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc) ("the disclosure of co-conspirator statements may expose not only the declarant to threats and intimidation, but also those expected to testify at trial

concerning the declarant's statements.   This approach endangers government witnesses by circumventing the protections of the Jencks Act."). The Sixth Circuit has held that "the government may not be compelled to disclose Jencks Act material before trial." *Presser*, 844 F.2d at 1283.

The Government next asserts that the "vast majority" of co-conspirator statements offered at trial will be verbal acts that are part of the conspiracy or have other non-hearsay bases.  Specifically, the Government represents that "[m]ost of the statements in recorded conversations [audio recordings, text messages, and Facebook messages] will not be offered for the truth of any matter asserted, but as verbal acts–or other non-hearsay evidence–constituting direct evidence of the charged crimes." Citing *United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) ("[s]tatements by co-conspirators are commonly introduced at trial simply because the statements themselves are part of the plotting to commit a crime"); *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009).

The Government suggests that, for the co-conspirator statements it intends to offer pursuant to Rule 801(d)(2)(E), the *Vinson* mini-hearing to establish the requisite *Enright* elements would be a "burdensome, time-consuming and uneconomic" means of establishing the foundational requirements. Citing *United States v. Barrett*, 933 F.2d 355, 358 (6th Cir. 1991).  The Government proposes admitting the statements

-5-

conditionally, which it asserts is the customary practice.  The Court then would evaluate at the end of the Government's case-in-chief whether the Government had proven by a preponderance of evidence that there was a conspiracy and that such statements were made by co-conspirators in furtherance of it. *United States v. Holloway*, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984) (conditional admission of co-conspirator statements offered under Rule 801(d)(2)(E) is "firmly entrenched in this circuit's practice"). *See also United States v. Montgomery*, 358 F. App'x 622, 626 (6th Cir. 2009); *Barrett*, 933 F.2d at 358; *United States v. Estrada*, 829 F.2d 1127 (Table), 1987 WL 44857, at *4 (6th Cir. 1987) (citations omitted) ("[t]his procedure allows trial courts to rely on hearsay statements themselves to determine whether the statements are admissible under Fed. R. Evid. 801(d)(2)(E).").

The Government asserts that, notwithstanding the above, it will agree to provide Defendant with any statements of co-conspirators 14 days prior to trial.

Defendant replies that it is not seeking discovery, especially as the Government has represented that it has complied with Rule 16.  Defendant argues the Government's proposed introduction of "verbal acts" is not widely recognized, and that not all of the statements proposed by the Government constitute verbal acts. Defendant challenges the absence of any process by which the Government notifies Defendant and the Court of the purpose of admitting certain statements.  Defendant

contends that could require a ruling by the Court and a cautionary instruction to the jury that the statement is only being offered because it was said, not that it was true. Defendant acknowledges that the Court can choose the method for determining admissibility of co-conspirator's statements pursuant to Rule 801(d)(2)(E).  But, Defendant cautions, if the Government does not meet its burden of admissibility, the Court would have to grant a mistrial if a cautionary instruction would not "shield the defendant from prejudice."

The Court concludes that a "mini-hearing" is not necessary or appropriate in this case.  The Government will have to satisfy its burden under *Enright* at trial with respect to Rule 801(d)(2)(E) statements and the admissibility of any hearsay statements it seeks to introduce.  If the Government fails to do so with respect to statements offered against Defendant, the Court shall address those issues as appropriate.  Defendant's Motion for a Written Proffer and Hearing on Admissibility of Co-Conspirators' Statements under FRE 801(d) is denied.  As the Government has represented that it will provide Defendant with any statements of co-conspirators 14 days prior to trial, the Court orders the Government to do so.

## III. Motion to Produce All Non-Cooperating, Post-Arrest Co-Defendants' Statements that the Government Intends Offering into Evidence [#312]

Defendant moves the Court to order the Government to provide any post-arrest statement made by a non-cooperating co-Defendant that the Government intends to

offer into evidence during its case-in-chief. The Government responded that it "has already complied with this request." Dkt. No. 324, PgID 1649. Defendant has not filed a reply to the Government's response or otherwise suggested that the Government has not provided Defendant with the information requested in Docket Number 312. The Court denies as moot, but without prejudice, Defendant's Motion to Produce All Non-Cooperating, Post-Arrest Co-Defendants' Statements that the Government Intends Offering in Evidence.

## IV. Motion to Strike Surplusage [#313]

Defendant contends that all of the allegations in Count I of the Superseding Indictment under the headnote "Overt Acts" (paragraph 13.a.-c. on pages 11-25) and all the allegations under the headnote "Notice of Acts with Enhanced Sentencing" (paragraphs (1) - (5) on pages 25-26) should be stricken because they are immaterial and irrelevant to the charges against him and prejudicial to him.

It is undisputed that the Court has discretion to strike surplusage from the Superseding Indictment. Fed.R.Cr.P. 7(d) and the Advisory Committee Notes thereto ("this rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial"); *United States v. Emuegbunam*, 268 F.3d 377, 394-95 (6th Cir. 2001); *United States v. Neller*, 229 F.3d 1154 (Table), 2000 WL 1234330, at *2 (6th Cir.

2000) (citations omitted) ("We review only for an abuse of [the court's sound] discretion. A motion to strike surplusage should be granted only where it is clear that the language is irrelevant and prejudicial"); *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (striking "non-essential allegations that could prejudicially impress the jurors").

Defendant contends, and the Government acknowledges, that a RICO charge under 18 U.S.C. § 1962(d) does not require proof of an overt act. *Salinas v. United States*, 522 U.S. 52, 63 (1997) ("there is no requirement of some overt act or specific act in the statute (18 U.S.C. §1962(d)) before us"); *United States v. Corrado*, 286 F.3d 934, 937 (6th Cir. 2002) ("Unlike the general conspiracy statute, § 1962(d) requires no overt or specific act in carrying the RICO enterprise forward."). For that reason, Defendant contends that the overt acts alleged in the Superseding Indictment are not legally relevant, especially as "the vast majority of overt acts alleged are not even racketeering activities[.]" Dkt. No. 313, PgID 1462. Defendant further asserts that the language of the overt acts alleged is "unduly prejudicial . . . (and) . . . 'serves only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]'" Quoting *United States v. Prejean*, 429 F.Supp.2d 782, 796 (E.D. La. 2006) (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).

The Government counters that Rule 7(d) has been strictly construed against

striking surplusage "no matter how prejudicial it may be" if the disputed language is legally relevant. Citing *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (quoting *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir.), *cert. denied*, 493 U.S. 867 (1989) (internal citations omitted)) ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).").  The Government maintains the question for the Court is whether the language at issue is legally relevant to the crime charged. *Id*.; *United States v. Ledbetter*, 2015 WL 5029249, at **1-2 (S.D. Ohio Aug. 26, 2015) (explaining why the court declined to strike overt act from the RICO conspiracy count).

The Government asserts that the overt acts in Count I identify the criminal activities and enterprise that Defendant and his co-defendants conducted and constitute the basis for finding Defendant (and his co-defendants) guilty of a RICO conspiracy.[1]   The Government suggests that Defendant's involvement in the

---

[1]The five elements that must be satisfied to establish a RICO conspiracy are:
1.   the existence of an enterprise;
2.   the defendant associated with the enterprise;
3.   the defendant knowingly agreed to participate in the conduct of the enterprise;
4.   the defendant agreed that either he, or another conspirator, would engage in a pattern of racketeering activity involving at least two predicate acts in furtherance of the enterprise; and
5.   the activities of the enterprise affected interstate commerce.

conspiracy (as alleged in the overt acts) is "vitally important for a jury trying to parse through a mountain of evidence." *Ledbetter*, 2015 WL 5029249, at *2.   The Government further contends that courts have consistently rejected motions to strike language that "serve[s] to identify the enterprise and the means by which its members and associates conduct various criminal activities." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (collecting cases).  The Government states that the disputed language is what the Government hopes to properly prove at trial, which overcomes any prejudicial effect. Citing *Moss*, 9 F.3d at 550.

Finally, the Government asserts that notices of enhanced sentencing are relevant in this case because the overt acts thereunder serve to increase the penalty for the crime beyond its prescribed statutory maximum, such that those facts must be submitted to a jury and proven beyond a reasonable doubt. Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  As the statutory maximum for RICO conspiracy is 20 years but can increase to life if the racketeering activity involved has a maximum penalty of life (as is the case for murder), the inclusion of those activities is included to ensure that: (1) the grand jury made such a finding, *id.* at 476; and (b) a special verdict form must be submitted to the jury at trial. Citing *United States v. Nagi*, 541 F. App'x 556, 576 (6th Cir. 2013).  The Government asserts that such language is

---

*United States v. Donovan*, 539 F. App'x 648, 660 (6th Cir. 2013).

-11-

constitutionally necessary under *Apprendi*.

In his reply, Defendant argues that the test is not whether the allegations will assist the jury in sorting through the case the Government has brought, with all of its complexities. Defendant also suggests that such language may include allegations that the Government will not introduce as evidence, which leaves the jury with the impression the Government has "special knowledge" of "additional" criminal activity. Defendant contends his motion should be granted or that the Superseding Indictment should not be read or introduced at trial.

The Court holds that Defendant's Motion is governed by *Moss*. *See Moss*, 9 F.3d at 550 (quoting *Thomas*, 875 F.2d at 662 n.2 ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).")). In this case, the Government has made allegations that are tied to, and that the Government hopes will constitute a basis for finding Defendant guilty of, a RICO conspiracy. Defendant's Motion to Strike Surplusage is denied.

The parties are advised that the Court may revisit this issue prior to trial. Many of Defendant's co-defendants have pled guilty – and other co-defendants still may plead guilty rather than go to trial. The Court wants to be sure that any defendants who go to trial are not tried for allegations unrelated to their alleged conduct,

recognizing that Count I is a RICO conspiracy charge and that some relevant conduct

pertaining to that charge may not involve the defendants who go to trial.

**V.    Motion for Pretrial Disclosure of All Rule 404(b) Evidence the Government Intends to Offer** [#314]

Defendant moves the Court to compel the Government to disclose, at least 60

days prior to trial, all Rule 404(b) evidence it intends to offer against him at trial.

Rule 404(b) provides:

> **(b) Crimes, Wrongs, or Other Acts.**
>
> **(1)** *Prohibited Uses***.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2)** *Permitted Uses; Notice in a Criminal Case***.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> > **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> >
> > **(B)** do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

The Court finds that Defendant's motion constitutes the request identified in Rule

404(b)(2).

Defendant suggests that 60 days would be "reasonable notice," FRE

404(b)(2)(A), avoid trial by ambush, citing *United States v. Kelly*, 420 F.2d 26, 29 (2d

Cir. 1969), and allow the parties and the Court to determine if the evidence is admissible prior to trial so that no error is committed. *United States v. Ebens*, 800 F.2d 1422, 1433-36 (6th Cir. 1986); *United States v. Blankenship*, 775 F.2d 735, 739-40 (6th Cir. 1985).

The Government responds that it does not anticipate introducing any evidence that comes within Rule 404(b).  It states that any evidence of Defendant's crimes, wrongs, or other acts offered will be admissible as intrinsic evidence of the RICO conspiracy charge, even if such evidence is not charged specifically in the Superseding Indictment. Citing *United States v. Fowler*, 535 F.3d 408, 422 (6th Cir. 2008) (internal quotations omitted) (finding that this type of evidence did not implicate Rule 404(b) because "it was properly admitted as evidence of his guilt because it tended to show [his] membership in the conspiracy" and that he "acted with the intent of furthering or facilitating the criminal endeavor"); *United States v. Garland*, 2008 WL 2939507, at *9 (6th Cir. Aug. 1, 2008) (testimony regarding the disappearance of an individual was not Rule 404(b) evidence but "tended to prove the existence of the RICO enterprise alleged by the government"); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) ("Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of the continuing pattern of illegal activity.").

"Bad acts by other participants in a common scheme are admissible 'as long as

they constitute part of the same criminal episode, whether or not a conspiracy is charged, and as long as independent evidence ties the defendant to that scheme.'" *United States v. Arbelaez-Agudelo*, 19 F. App'x 203, 207 (6th Cir. 2001) (quoting *United States v. Toney*, 161 F.3d 404, 413-14 (6th Cir. 1998)); *United States v. Norwood*, 2014 WL 1870809, at *3 (E.D. Mich. May 9, 2014).

The Government states that it understands its obligations under Rule 404(b) and that, should it become aware of any Rule 404(b) evidence the Government would introduce, it would file any required notice in a timely manner.

Defendant contends that, although the Government indicates that it will only seek to introduce evidence of Defendant's guilt in the conspiracy (and not other acts), as set forth in *Fowler*, the Government still must establish the nexus between the act and the conspiracy and not simply that he was engaged in other alleged criminal activity. For that reason, Defendant argues that the Court should still order prompt disclosure of any such evidence the Government intends to offer at trial. Defendant proposes that the Court issue an order that: (1) the Government shall promptly disclose any evidence subject to Rule 404(b)," and (2) if the Government fails to do so, the Court will exclude any such evidence if the Government seeks to introduce it at trial.

The Court notes that the Government has represented that it does not expect to

-15-

introduce any Rule 404(b) evidence with respect to Defendant.  The Court further notes that the Government has represented that, should it become aware of any Rule 404(b) evidence it could introduce against Defendant, it will notify Defendant in a timely manner.  The Court denies without prejudice Defendant's Motion for Pretrial Disclosure of All Rule 404(b) Evidence the Government Intends to Offer.  The Court Orders that, should the Government become aware of any Rule 404(b) evidence it could introduce against Defendant, the Government shall notify Defendant immediately of the existence of such evidence.  The Court also advises the Government that, should the Government fail to timely disclose any evidence subject to Rule 404(b) – including evidence that the Government believes is admissible as intrinsic evidence of the RICO conspiracy charge, the Court will allow Defendant to raise this motion anew.

## VI.    Motion to Dismiss (Commerce Clause) [#315]

Defendant contends the charges contained in the Superseding Indictment should be dismissed because the Court lacks jurisdiction.  Defendant suggests the charges are unconstitutional, as they exceed the scope of the Commerce Clause because they are not sufficiently connected to interstate commerce.  Defendant cites two cases where the courts dismissed RICO conspiracy charges for lack of connectivity between the enterprise and interstate commerce, including one court which also dismissed

-16-

substantive RICO charges. Citing *United States v. Waucaush*, 380 F.3d 251 (6th Cir. 2004); *United States v. Garcia*, 143 F.Supp.2d 791 (E.D. Mich. 2000).

The Court believes that Defendant's reliance on *Garcia* is misplaced. That decision was dictated by unusual facts reflecting the absence of any connection–or the tenuous connection–to interstate commerce: (1) the members of the enterprise street gang drove on an interstate highway; (2) members of the gang purchased a gun at a trade center with out-of-state customers; (3) the street gang had chapters in other states; and (4) gang members discussed gang issues while on a trip to Mexico. *Garcia*, 68 F.Supp.2d at 811-12.

The Government first contends that Defendant has offered no evidence–or argument–that the crimes alleged against him did not affect interstate commerce. The Government is accurate as Defendant does not explain in its motion or brief how or why the charges in this case are not sufficiently connected to interstate commerce to preclude implication of the Commerce Clause and the exercise of jurisdiction by the Court. But, Defendant is not obligated to demonstrate the non-existence of an interstate commerce nexus (as the burden is on the Government to show a sufficient connection), and the Court rejects the Government's argument on that point.

The Government next contends that there is substantial evidence that Defendant's crimes did affect interstate commerce. The Court agrees. The Court

finds that allegations in the RICO charge in the Superseding Indictment are sufficient to confer jurisdiction because they satisfy the de minimis connection to interstate commerce required in the Sixth Circuit. *See, e.g., United States v. Riddle*, 249 F.3d 529, 537-38 (6th Cir. 2001). More specifically, the allegations of drug trafficking (including Defendant's drug trafficking activity) alone constitute conduct that confers jurisdiction on the Court. *See, e.g., United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996) (drug trafficking offenses "always implicate interstate commerce concerns"); *Taylor v. United States*, 136 S.Ct. 2074, 2080-81 (2016) ("the market for illegal drugs is 'commerce over which the United States has jurisdiction'").

As the Government asserts, the charges in Counts IV, V, VIII, and IX also affect interstate commerce. Pursuant to *United States v. Mapp*, 170 F.3d 328, 336 (2d Cir. 1999), so long as acts brought under the violent crime in aid of racketeering statute, 18 U.S.C. § 1959 ("VCAR statute"), "bear a strong relationship to racketeering activity that affects interstate commerce, [they] do[] not risk improperly making purely local crimes a matter of federal concern." *See also Riddle*, 249 F.3d at 538 (a sufficient connection to interstate commerce exists where "the government establishes a connection between the [VCAR statute] and a RICO enterprise which has a de minimis interstate commerce connection.").

Count IV alleges that Defendant and a co-defendant murdered a rival gang

member for the purpose of maintaining and increasing their positions in the Rollin 60s Crips enterprise.  Count VIII alleges that Defendant and a co-defendant assaulted a victim at an ATM with a dangerous weapon for the purpose of maintaining and increasing their positions in the Rollin 60s Crips enterprise. Dkt. No. 194, ¶¶ 679-80 and 682-83.  The Court finds that those allegations sufficiently connect those charges to the RICO enterprise alleged in Count I because they were illegal acts in furtherance of the RICO enterprise. *Riddle*, 249 F.3d at 538.  As Counts V and IX involve the use and carrying of a firearm during and in relation to Counts IV and VIII, respectively, they also have at least a de minimis connection to the RICO allegations.

Defendant asserts that there is not a strong relationship between the VCAR counts and the RICO enterprise count in this case.  The Court declines Defendant's request that the Court find that the Government has not satisfied the requirements of *Mapp*, a case that involved a "strong relationship" to racketeering.  In *Mapp*, the murders involved robbing businesses "engaged in interstate commerce by selling goods that had been obtained from out of state." *Mapp*, 170 F.3d at 336.  Based on *Riddle*, a "strong relationship" is not necessary; only a de minimis connection to the RICO conspiracy must exist. *Riddle*, 249 F.3d at 538.

Defendant's Motion to Dismiss based on the Commerce Clause is denied.

## VII.   Motion to Revoke Order of Detention [#317]

On August 15, 2016, Defendant made his initial appearance and was temporarily detained. In a report prepared on August 17, 2016, the Pretrial Services Officer recommended that Defendant be detained because "[t]here is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community." A detention hearing was held on August 17-18, 2016. No testimony was offered or taken, and the hearing proceeded solely by proffer. Magistrate Judge R. Steven Whalen ordered Defendant detained, and made the following statement of reasons for detention:

> Per indictment, there is probable cause to believe Defendant participated in 2 murders related to gang activity, and ongoing and recent involvement in drug trafficking (seriousness of offenses); association in activities of a violent street gang. And for reasons stated on the record on 8/18/16.

[Dkt. No. 229, PgID 778]

Defendant has now filed a Motion to Revoke Order of Detention based on: (1) the absence of a significant criminal history; (2) the Magistrate Judge erroneously relying on the allegations in the Superseding Indictment to conclude that the Government carried its burden by clear and convincing evidence that Defendant represented a danger to the community; (3) the release on personal bonds of some of his co-defendants; and (4) the existence of conditions of release that will ensure that Defendant will refrain from criminal activity, attend future court appearances, and

-20-

ensure the safety of the community, including house arrest, curfew, GPS tether, employment, and/or regular reporting. The Government filed a response in opposition to the Motion. Defendant did not file a reply brief.

### A.      Applicable Law

The Bail Reform Act, 18 U.S.C. § 3142, requires that a defendant be released pending trial unless there are no conditions that will reasonably assure the appearance of the person at future court proceedings and the safety of the community. *See* 18 U.S.C. § 3142(e). A court may, however, order detention of the defendant if the court finds that no set of conditions will reasonably assure the appearance of the person and the safety of the community. *See* 18 U.S.C. § 3142(f). In reaching this determination, the district court must take into account available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release (*i.e.*, "the Section 3142(g) factors"). 18 U.S.C. § 3142(g).

The Bail Reform Act's default rule of release pending trial is reversed, and detention is presumed, for certain particularly dangerous defendants. 18 U.S.C. § 3142(e)(3); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). If a defendant is charged with a crime of violence or a drug trafficking offense, it is presumed by the

statute that no condition or combination of conditions will assure the appearance of the defendant or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption imposes a burden of production on the defendant to offer at least some evidence that he does not pose a danger to the community or risk of flight. *Stone*, 608 F.3d at 945.  The Government retains the burden of proving dangerousness to the community by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *United States v. Rodriquez*, 950 F.2d 85, 88 (2d Cir. 1991).

Even if a defendant satisfies that burden of production, the district court must still give some weight to the presumption of detention because it reflects Congress's judgment that "particular classes of offenders should ordinarily be detained prior to trial." *Id.*; *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) ("[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.").  If the presumption in favor of detention simply vanished upon rebuttal, "courts would be giving too little deference to Congress' findings regarding this class" of defendants. *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986)).

**B.    Analysis**

There is presumption of detention for a defendant charged with violent crimes such as murder and armed robbery, *Stone*, 608 F.3d at 945.  Based on the fact that a grand jury has determined that probable cause exists that Defendant committed the crimes charged in Counts I, IV, V, VIII and IX (namely, the murder and assault with a dangerous weapon charges in Counts VI and IX), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and safety of the community." 18 U.S.C. § 3142(e)(3)(a) and (b); *Stone*, 608 F.3d at 945 ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. Thus, when the government presents an indictment including charges listed in section 3142(e), it has fulfilled its burden to establish the presumption in favor of detention.") (citations omitted).

Defendant argues that a review of the Section 3142(g) factors weigh in favor of releasing him on bond, with conditions.  Defendant's argument is limited, and he does not cite any case law to support a release from detention under facts such as those presented in this matter.  First, Defendant acknowledges the serious charges against him, including allegations that he was involved in both a homicide and an assault involving a separate homicide, carry a presumption of dangerousness.  Defendant contends that those factors are offset by the constitutional presumption of

innocence to which he is entitled and the fact that the charges are allegations, left to be proven at trial.

Second, Defendant asserts that the weight of the evidence of dangerousness against him (as opposed to "the weight of evidence of the defendant's guilt." *Stone*, 608 F.3d at 948) relates primarily to a drive-by shooting on August 8, 2011 resulting in the death of a person playing basketball and a June 20, 2002 shooting during an attempted robbery where another "gang member" was accidently shot by Defendant. Defendant states that the weight of the evidence is not substantiated by any prior conviction on these allegations, and that the alleged drug dealing in which he was involved related to small amounts of drugs, not conduct that would support detention. Defendant suggests that the evidence the Government relies upon, including cryptic messages on Facebook and messages on a cell phone regarding: (1) alleged drug trafficking; and (2) retaliation against other gang members (the Bloods) or an alleged informant, did not involve Defendant himself.

Third, with respect to his history and circumstances, Defendant attached to his motion letters from: (a) Ms. Reese, Defendant's mother, attesting to his care for her; (b) his prior employment with Nance Irrigation & Landscaping Company; (c) Ms. Burton and Danai Aarons regarding Defendant's character; (d) Lincoln Behavior Services regarding Defendant's participation over the last three (3) years to manage

his psychiatric problem, and (e) St. Vincent and Sarah Fisher Center related to his enrollment in the GED Tutoring Program.

Finally, as to the nature and seriousness of danger to any person, Defendant contends that there are no particular person(s) who would be in danger if Defendant is released and that the community can be safe-guarded by restrictive conditions. Defendant notes that law enforcement's search of his vehicle (and his arrest) did not reveal any weapons or drugs.

For those reasons, Defendant urges the Court to release Defendant on bond, including home detention with his mother on Nevada Street in Detroit (if necessary), with a GPS tether to ensure he did not leave the residence, plus order Defendant to have no contact with any defendant, member or associate of the Rollin 60s Crips.

The Court is not persuaded that Defendant should be released on bond because he has failed to offer evidence to rebut the presumption of detention.  First, the Court concludes that allegations of two murders and an armed robbery–all of which allegedly involved the possession of a firearm in furtherance of those crimes– show that Defendant poses a clear danger to the community.  Second, Defendant's argument that he has limited criminal history does not rebut the presumption of detention or that he is a danger to the community. *See, e.g., Rodriquez*, 950 F.2d 88-89 (the government does not need to prove a history of violence or dangerous conduct to detain a

-25-

defendant pending trial because he is a danger to the community).

Third, even if the Court were inclined to release Defendant on bond, he has not proposed a suitable third-party custodian. Defendant suggests that his mother act as his third-party custodian at her residence on Nevada, in Detroit. Defendant's mother would not be a suitable third-party custodian because she "offered to sell her son '$160 for 80 (750) narcos'" (a type of opiod pain medication) in April 2016 and Defendant was living with her when he allegedly was trafficking drugs as recently as July 2016. *United States v. Boy*, 322 F. App'x 598, 600 (10th Cir. 2009) (mother not a suitable third-party custodian where defendant committed charged offense while living with his parents). Fourth, Defendant faces a mandatory sentence of life in prison. 18 U.S.C. § 1959(a)(1). The possibility of mandatory life in prison constitutes a reason to flee and avoid trial.

For the reasons stated above, there are no conditions pursuant to which the safety of the community could be reasonably be assured. The Court also finds that, as Defendant is facing life in prison if convicted, he is a risk of flight. The Court concludes that Defendant has not satisfied his burden of rebutting the presumption of detention that exists in this case. The Court denies Defendant's Motion for Revocation of Detention.

## VIII.  Motion to Dismiss (Federal Juvenile Delinquency Act) [#334]

Defendant argues that the Court lacks jurisdiction over the crimes he allegedly committed as a juvenile.  Defendant relies on his interpretation of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq* ("FJDA").

It is uncontested that Defendant had not attained the age of 18 when he allegedly committed the overt acts attributed to him in Count I (overt acts 21, 29, 30 and 31) and the substantive crimes set forth in Counts IV, V, VIII, and IX.  Defendant turned 18 on April 18, 2013, and he turned 21 on April 18, 2016, about three months before he was charged in the Superseding Indictment.

Defendant argues that the FJDA is subject to more than one interpretation, but Defendants asserts that where a defendant is alleged to have engaged in the conspiracy before turning 18, the Government has to prove that the defendant "ratified" his participation in the conspiracy after he turned 18. Citing *United States v. Machen*, 576 F. App'x 561 (6th Cir. 2014). *See also United States v. Odom*, 13 F.3d 949, 957 (6th Cir. 1994) ("a defendant who enters a conspiracy before his eighteenth birthday can be tried as an adult if he continues in the conspiracy after that time"); *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991).

The Government responds that the FJDA does not apply with respect to Defendant because it only applies to the prosecution of juveniles (those who are under

21) who are charged with committing acts of "juvenile delinquency."[2] 18 U.S.C. § 5031-32.  Defendant was not indicted until three months after he turned 21.  As the Government accurately asserts, courts have uniformly held that defendants indicted after turning 21 cannot invoke the protection of the FJDA. *See, e.g., United States v. Blake*, 571 F.3d 331, 344–45 (4th Cir. 2009); *United States v. Wright*, 540 F.3d 833, 838–39 (8th Cir. 2008); *United States v. Hoo*, 825 F.2d 667, 669–70 (2d Cir. 1987); *In re Martin*, 788 F.2d 696, 697–98 (11th Cir. 1986); *United States v. Araiza-Valdez*, 713 F.2d 430, 432–33 (9th Cir. 1980); *United States v. Gay*, No. 14-20119, 2015 WL 3579880, at *2 (E.D. Mich. 2015).

The "ratification" cases cited by Defendant are inapplicable, as those cases involved defendants whose crimes straddled their 18th birthdays and who were indicted <u>before</u> they turned 21. *See, e.g., Maddox*, 944 F.2d at 1233; *Machen,* 576 F. App'x at 564-65.  As Defendant was not charged until after he turned 21, the Government maintains that the ratification argument must be rejected. *Gay*, 2015 WL 3579880, at **2-3 ("because [the defendant] was indicted after his twenty-first birthday, the question of whether he ratified his conspiracy after his eighteenth birthday is irrelevant").

---

[2]An act of "juvenile delinquency" is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of [18 U.S.C. §] 922(x)." 18 U.S.C. § 5031.

Defendant next argues that the Government delayed indicting him until after he turned 21, in violation of his due process rights pursuant to the Fifth Amendment. Defendant contends the following facts demonstrate that the Government delayed indicting him until he was 21: (1) the murders occurred in 2011 and 2012; (2) a search warrant for Facebook information connected to Defendant was executed on or about November 18, 2013[3]; and (3) the initial Indictment in this case was filed on January 27, 2016, before he turned 21.  Defendant suggests that the Government did not need to wait until July 27, 2016 to charge him.  Defendant argues that the Court should reject the Government's claims that the Government needed to conduct further investigation before charging him and dismiss the Superseding Indictment.

The Government argues that it did not learn of the August 8, 2011 murder until May 2016, after the initial Indictment was filed, so those charges could not have been brought in the January 27, 2016 Indictment.  As Defendant notes, the Government does not say that it did not know about the June 12, 2012 murder or Defendant's participation in the RICO conspiracy prior to April 2016, when Defendant turned 21. Defendant does not cite any case where a Court dismissed the indictment because the

---

[3] It is unclear what search warrant Defendant is referring to here as no search warrant is identified in his motion or briefs.  The overt acts of drug trafficking via advertisements on Facebook allegedly committed by Defendant occurred on January 9, 2011 and November 27, 2013. *See* Dkt. No. 194, PgID 669 (overt act 10) and PgID 672 (overt act 40).

Government waited until a defendant was 21 to charge the defendant with criminal activity allegedly conducted by the defendant before he turned 18. Courts generally have recognized and granted prosecutors discretion regarding the timing of when to file actions in this type of case. *See, e.g., In Re Martin*, 788 F.2d at 698 ("the fact that the government could have brought the charges earlier is irrelevant"); *Ariaza-Valdez*, 713 F.2d at 431.

The Government represents that the timing of the Superseding Indictment was motivated by the investigation and an effort to bring appropriate charges against Defendant and his co-defendants. *See Hoo*, 825 F.2d 671 (rejecting the same argument Defendant makes here because "the delay in filing the indictment was due entirely to legitimate considerations, such as the need to obtain evidence and the difficulties that necessarily arise in a complex RICO investigation.").

Even if there is a delay, a due process violation and the dismissal of the Superseding Indictment for pre-indictment delay requires a showing by Defendant that he suffered "substantial prejudice to [his] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). *See also United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984) (dismissing an indictment for pre-indictment delay "is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that

the delay was an intentional device by the government to gain a tactical advantage."). As the *Marion* court stated, to "accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *Marion*, 404 U.S. at 325.

The Government asserts that Defendant has failed to show "actual prejudice in presenting his defense," *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009), something that is "nearly insurmountable . . . because proof of actual prejudice is always speculative." *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997). The Government claims that Defendant's motion should be denied as he has not even attempted to show "actual prejudice." *United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) ("bare assertions, without supporting evidence, are not sufficient to demonstrate prejudice"). Defendant replies that the penalties for proceeding against an adult, as opposed to a juvenile, are clear, such that the prejudice created by the Government's delay is evident.

The Court concludes that Defendant has not met his burden. Without question, Defendant is subject to possible federal incarceration on Counts VIII and IX (for which he seemingly could have been charged in the initial Indictment) if he has to go to trial on the charges against him set forth in the Superseding Indictment, an incarceration he would not have to be concerned about if the charges were thrown out

due to the Government filing the Superseding Indictment "too late."  But, as set forth in *Marion* and *Greene*, dismissal of an indictment for pre-indictment delay "is warranted only when the defendant shows substantial prejudice to his <u>right to a fair trial</u> and that the delay was an intentional device by the government to gain a tactical advantage." *Greene*, 737 F.2d at 574 (citations and internal quotations omitted) (emphasis added). *See also United States v. Lovasco*, 431 U.S. 783, 790 (citations omitted) (courts are "to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions', and which define 'the community's sense of fair play and decency'.")  Defendant has not shown how his right to a fair trial has been prejudiced by the Government charging him on July 27, 2016 rather than on January 27, 2016, nor has he shown how such delay gives the Government a tactical advantage at trial.

Finally, Defendant contends that 18 U.S.C. § 5031 is unconstitutional, as it violates the *Ex Post Facto* Clause, U.S. Const. Art. I, § 10, clause 1.  Defendant asserts that the *Ex Post Facto* Clause bars statutory enactments which, by retroactive operation, increase punishment for a crime after its commission.  Defendant suggests that the Government, by waiting until after his 21st birthday to charge him for conduct that occurred prior to his 18th birthday violates the prohibition against *ex post facto* laws.  The Court rejects this argument.  First, as discussed above, the FJDA does not

apply in this case because Defendant was not charged until after he turned 21.

Second, as the Government notes, a law is only *ex post facto* if it is enacted after the events sought to be governed by that law. *See Weaver v. Graham*, 450 U.S. 24, 29 (1981) (quoting *Cummings v. Missouri*,77 U.S. 277 (1866)) ("two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it"). The FJDA was last amended in 1984, and the charges against Defendant stem from activity that occurred about 25 years later. The Court concludes that the FJDA does not violate the *Ex Post Facto* Clause of the U.S. Constitution as it relates to the charges against Defendant.

The Court denies Defendant's Motion to Dismiss pursuant to the FJDA.

## IX.    Conclusion

Accordingly,

IT IS ORDERED that

A.    Defendant's Defendant's Motion for a Written Proffer and Hearing on Admissibility of Co-Conspirators' Statements under FRE 801(d) [#311] is **GRANTED IN PART** and **DENIED IN PART**.

B.    Defendant's Motion to Produce All Non-Cooperating, Post-Arrest Co-Defendants' Statements that the Government Intends Offering in Evidence [#312] is

**DENIED AS MOOT**.

      C.      Defendant's Motion to Strike Surplusage [#313] is **DENIED**.

      D.      Defendant's Motion for Pretrial Disclosure of All Rule 404(b) Evidence the Government Intends to Offer [#314] is **DENIED** without prejudice.

      E.      Defendant's Motion to Dismiss [#315] based on the Commerce Clause is **DENIED**.

      F.      Defendant's Motion to Revoke Order of Detention [#317] is **DENIED**.

      G.      Defendant's Motion to Dismiss [#334] pursuant to the Federal Juvenile Delinquency Act is **DENIED**.

      IT IS FURTHER ORDERED that the Government shall provide Defendant with any statements of co-conspirators no later than 14 days prior to trial.

      IT IS FURTHER ORDERED that, should the Government become aware of any Rule 404(b) evidence it could introduce against Defendant, the Government shall notify Defendant immediately of the existence of such evidence.

      IT IS ORDERED.

                        S/Denise Page Hood
                        Denise Page Hood
                        Chief Judge, United States District Court

Dated:  April 7, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager