## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,               CASE NO. 16-20062
                                  HON. DENISE PAGE HOOD

v.

D-13 RODEREK PERRY,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO SUPPRESS [#318]

## I.    INTRODUCTION

The Government intends to introduce evidence obtained pursuant to the search of Defendant's cell phone in August 2016.  Defendant filed a Motion to Suppress [#318], wherein he seeks to exclude the introduction of information and items obtained: (a) during the search of his vehicle (in particular, his cell phone); and (b) pursuant to the search warrant obtained as a result of that search.  Defendant contends that the cell phone was seized in violation of his Fourth Amendment rights because: (1) the search was conducted during an unlawful "inventory" search; and (2) the search warrant was issued without probable cause.

Defendant argued that an evidentiary hearing was necessary to determine the

factual issues and credibility of the witnesses regarding the search of the vehicle and to determine the validity of the affidavit in support of the search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Jackson v. Denno*, 378 U.S. 368, 377 (1964); *Sims v. Georgia*, 385 U.S. 538, 544 (1967). On March 9, 2017, the Court held an evidentiary hearing. The Government called Detroit Police Department ("DPD") Officer Gregory Robson ("Robson"), and Defendant called Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Joseph Nether and DPD Officer Treeva Eaton ("Eaton").

## II.    FACTUAL BACKGROUND

On August 2, 2016 at about 7:30 a.m., Special Agent Nether set up surveillance at 14917 Parkside, Detroit, Defendant's residence. At 7:55 a.m., Defendant arrived in a silver Chevy Caprice (the "Caprice"), parked across the street from the Parkside address, and entered it. About 8:00 a.m., Defendant and a white female exited the residence and entered the Caprice. Federal law enforcement was aware that Defendant had a court hearing in the Troy District Court for a probation violation and set up surveillance there. About 9:00 a.m., ATF Task Force Officer ("TFO") Robert Bolden saw the Caprice arrive in the parking lot of the district court and the two occupants entered the courthouse. Shortly thereafter, the female exited the courthouse alone, entered the Caprice, and drove toward Detroit. ATF Special Agent Justin Henry

2

determined from court personnel that Defendant had been taken into custody after being sentenced to jail.

Law enforcement also had determined that the white female was Leann Marie Rodriguez ("Rodriguez"), who had a valid warrant from the 43rd District Court in Madison Heights. The warrant was for failure to appear for the traffic offense of failure to display. Surveillance of the Caprice was continued from the Troy District Court into Detroit. Once inside the city limits of Detroit, Special Agent Curtis Brunson, the ATF Task Force Supervisor, called Robson to request assistance; specifically, to effectuate a traffic stop of Rodriguez. At around 11:30 a.m., Robson conducted a traffic stop of the Caprice on Conant near Gallagher.

Robson testified about the events related to the stop of the Caprice at the evidentiary hearing. He indicated that he was assigned to the Traffic Enforcement Unit on August 2, 2016. While at the city wide base at the beginning of his shift, he received a call from Special Agent Brunson. Robson had known Special Agent Brunson for about seven years as the result of working with him on a Comprehensive Violence Reduction Partnership. Robson has maintained contact with Special Agent Brunson through sports and other social activities. Special Agent Brunson requested that Robson stop the Caprice for a traffic violation. Robson was given the location of the Caprice, located the vehicle, and stopped the vehicle for varying the lane of traffic

3

without signaling. Robson testified that the traffic violation was the due to the vehicle going from the curb lane to closer to the middle line without signaling. At that location on Conant Street (near Gallagher Street), the road is one lane in each direction, with a parking lane on each side.

Once Rodriguez pulled over and stopped, Robson identified himself and requested from her the registration and proof of insurance for the vehicle and for her driver's license. Rodriguez had none of these documents, although Robson recalled that she had some sort of identification. Robson testified there was a temporary license tag in the window and identified it as Exhibit B. Rodriguez was never asked about the temporary license tag. After he ran a LEIN check, Robson told Rodriguez that she was being arrested, directed her out of the vehicle, and detained Rodriguez on the outstanding warrants for failure to appear to pay traffic tickets. Rodriguez was issued citations for failure to signal, no registration and no proof of insurance, all civil infractions. Eaton, who also was assigned to the TFO, testified that she responded to the scene to assist with the arrest of Rodriguez. Other TFO members also responded to the scene.

The Caprice was registered to Defendant, but Rodriguez was the only occupant of the vehicle. Robson noted it is DPD policy to "ticket and tow" a vehicle when it is stopped without a licensed driver, indicating that he was required to impound the

vehicle. He contacted the zone dispatcher and gave the last 6 numbers of the vehicle

VIN number. He also searched the vehicle for contraband and for the purposes of

securing property to avoid liability. Two cell phones were found.  One was possessed

by Rodriguez, and one was on the front seat.  The one on the front seat was a white

Samsung cell phone, Model SMG360TI, FCC ID: A3LSMG360T (hereinafter, "the

cell phone").   This information was contacted to Special Agent Brunson, who was

sitting in the Government attorney's office.  Robson testified that Special Agent told

Robson that Special Agent Brunson was going to call a number and wanted Robson

to see if the cell phone started ringing.  About that time, the cell phone began ringing,

which was communicated to Special Agent Brunson.  The cell phone was given to

Eaton at the scene, as were mail and other documents with Defendant's name on them

that were recovered from the Caprice.

Robson testified he waited for the tow truck and prepared paperwork, including

two impound cards, one for the tow company and one he was to turn in to the base at

the end of his tour.  Robson testified he turned the DPD copy of the impound card into

a basket at his base at the end of his tour.  That impound card, although reportedly

searched for by Robson, is no longer available. After the Caprice was towed, Robson

and Eaton transported Rodriguez to the detention facility. After Madison Heights

5

authorities refused to pick Rodriguez up for her warrant, Robson and Eaton took Rodriguez to her home.

Eaton testified that she did not seize any evidence from the Caprice, nor did she see a search of the vehicle. She testified that she received Defendant's documents and the cell phone at the scene, all of which she handed over to Special Agent Nether at the Redford base for the Task Force. Eaton stated that she saw the Caprice get towed and she transported Rodriguez with Robson.

On August 4, 216, two days after the seizure of the cell phone, an application for a search warrant to search the cell phone was submitted to and approved by Magistrate Judge Mona K. Majzoub. *See* Dkt. No. 318, Ex. B. Special Agent Nether then searched the phone and found messages between Defendant and other Rollin 60s Crips members discussing the sale of illegal drugs, along with pictures of Defendant and illegal drugs.

## III.   ANALYSIS REGARDING INVENTORY SEARCH

Defendant contends that the seizure of the cell phone and documents were the result of an invalid inventory search and that any evidence stemming from those items should be suppressed. He contends that the Government initiated a traffic stop of Defendant's vehicle as a pretext to search his vehicle. Defendant acknowledges that a valid inventory search conducted without a warrant does not violate the Fourth

Amendment and is recognized as a well-defined exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371-74 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). The justification for a valid inventory search is that it "serve[s] to protect an owner's property while it is in the custody of police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372; *United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007).

A warrantless inventory search may be conducted only when the police have "lawfully tak[en] custody of the vehicle." *Hockenberry*, 730 F.3d at 658; *Smith,*510 F.3d at 651 (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) (citing *Florida v. Wells*, 495 U.S. 1, 5 (1990))). The Government has the burden of proof to justify a warrantless inventory search. *Coolidge v. New Hampshire*, 403 U.S. 443, 445 (1971); *United States v. Haynes,* 301 F.3d 669 (6th Cir. 2002). The inventory search must be conducted "according to standard police procedures" and be "sufficiently tailored to only produce an inventory." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012); *Lumpkin*, 159 F.3d at 987; *Bertine*, 479 U.S. at 375-76. The search must be conducted in good faith and must not be undertaken as a pretext for a criminal investigation and to discover evidence of criminal activity. *Opperman*, 428 U.S. at 376; *Jackson,* 682 F.3d at 455; *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). In conducting an inventory search, officers must follow the

applicable policy, *Wells*, 495 U.S. at 4, but the presence of an investigative purpose or their suspicion that they may find contraband during the search does not invalidate an otherwise proper inventory search. *Lumpkin*, 159 F.3d at 987.

Defendant argues that the DPD never lawfully took custody of the Caprice, as the DPD turned the vehicle over to the TFO agents and did not follow DPD procedures for impounding vehicles. *See* Dkt. No. 318, Ex. B (DPD Manual, Directive 204.4 - Impounding of Vehicles). Defendant states that DPD officers did not: (1) fill out any documents for impoundment, specifically the Impounded Vehicle Card; (2) notify Telephone Crime Reporting; (3) contact the dispatcher to request a tow company; (4) remain with the vehicle until the tower completed the impounding; or (5) conduct an inventory of the vehicle – pursuant to DPD policy. Defendant states that the DPD left the vehicle on the street and did not place a hold on the vehicle.

As the Government states, DPD's policy on impounding of vehicles provides that "[a]bandoned vehicles constitute a public nuisance, a hazard to traffic, and the community views their removal as an essential service…" Dkt. No. 318-3, Ex. B (DPD Manual, Directive 204.4 - 2). The Government contends that, upon determining that Rodriguez, the car's sole occupant, had a valid warrant for her arrest and no lawful or valid temporary plate or paperwork related to Defendant's car, the Caprice

8

fell under the Detroit Police Department's definition of "abandoned vehicles,"[1] thereby mandating its impound. Dkt. No. 318, Ex. B (Directive 204.4 - 4.5). The Government suggests that, had they left Defendant's car on the road after Rodriguez's arrest, the DPD would have been violating DPD's impoundment policy. *Id.* For that reason, the DPD towed the Caprice after the officers completed the required inventory search of the vehicle.

The Court finds that the uncontroverted testimony at the evidentiary hearing demonstrates that the DPD did have the Caprice towed. Robson testified that he conducted an inventory search after stopping and detaining Rodriguez on an outstanding bench warrant. As he testified, at that point, he had to impound and inventory the Caprice and that he complied with DPD procedures in doing so. Robson and Eaton both testified that they saw the Caprice towed after Robson radioed for a tow truck.

Defendant argues that the search of the Caprice was conducted not simply as an inventory search, but rather as part of an investigative search. Defendant notes that the stop of the Caprice was at the direction of federal agents for the alleged purpose

---

[1]The DPD Manual (quoting M.C.L. 257.252a) defines an abandoned vehicle as, "A vehicle on a state road…without a valid registration plate affixed to the vehicle for any period of time." Dkt. No. 318, Ex. B (Directive 204.4 - 4 - 4.1).

of arresting the driver for an outstanding traffic warrant in Madison Heights, yet agents waited until the vehicle crossed into city limits of Detroit to make the stop. Defendant states that the traffic violations the DPD officers allegedly observed were non-arrestable civil infractions, and Rodriguez was not the target of any investigation. Defendant contends that the stop of the vehicle was simply a ruse to search the vehicle for any evidence that could be used to prosecute Defendant.

Defendant next asserts that the decision to "impound" the Caprice was merely a pretext to gain access the vehicle. Defendant suggest that, because the evidence seized was not placed on inventory with DPD but immediately turned over to federal agents who were present at the scene of the stop, it is clear that the legal purposes for an inventory search (to protect the owner's property, protect the police from false claims, etc.) were not present. Defendant contends that, because the driver was only detained and never arrested[2] and the Caprice was left on the street, without impoundment, there was no legal inventory search, such that the seizure of the cell phone was constitutionally infirm and must be suppressed.

---

[2]A person arrested in Detroit on a traffic warrant may be released on bond without an arrest ticket under the Interim Bail Act or must be afforded an opportunity to post bail.

The Government does not deny that the ATF had an investigatory purpose in seizing Defendant's cell phone from his car but claims this does not make DPD's actions unlawful. Citing *Lumpkin*, 159 F.3d at 987. Defendant argues that the cases the Government relies on (such as *Lumpkin*) cannot be reconciled with Supreme Court precedent prohibiting inventory searches grounded in a pretext to conduct an investigatory search. For that reason, Defendant argues that as the Government has conceded an investigatory purpose for the traffic stop of Rodriguez, the subsequent search was unlawful under Supreme Court precedent. *See, e.g., Bertine*, 479 U.S. at 375-76 (the inventory search must be conducted "according to standard police procedures" and be "sufficiently tailored to only produce an inventory"). The Court notes that the *Lumpkin* court recognized the same principles Defendant identifies, *Lumpkin*, 159 F.3d at 987, but the *Lumpkin* court also said that the presence of an investigative purpose or the suspicion that contraband may be found during the search does not invalidate an otherwise proper inventory search. *Id.*

The Court concludes that Robson conducted a technically legitimate traffic stop and detention of Rodriguez, even though the stop appears to be intended for investigative purposes. Robson testified that he stopped Rodriguez because the Caprice varied its lanes of travel without signaling. That is a valid basis for making a traffic stop, even though the driving and parking lanes are not clearly demarcated.

11

Robson also testified, and the evidence introduced demonstrated, that a bench warrant had been issued against Rodriguez for failure to appear in 43rd District Court.  That evidence provided a valid reason to detain Rodriguez for the purpose of arresting her. For those reasons, the inventory search was valid, even if it had an investigative purpose.

For the foregoing reasons, the Court denies Defendant's Motion to Suppress to the extent he argues that Defendant's cell phone was seized pursuant to an illegal inventory search.

## IV.   ANALYSIS REGARDING SEARCH OF THE CELL PHONE

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures.  To protect that interest, a search warrant may issue only upon a showing of probable cause. "Probable cause is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000).  Probable cause requires more than mere suspicion. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).  Review of the affidavit and search warrant is based on a "totality of the circumstances" determination with deference to the magistrate judge's finding of probable cause. *Id*.; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).  That deference is not absolute, and a reviewing

court must ensure that the issuing magistrate did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984).  The reviewing court is "limited to information presented in the four corners of the affidavit." *United States v. Jackson*, 470 F.2d 299, 306 (6th Cir. 2006).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). The affidavit in support of the warrant must set forth "a nexus between the place to be searched and the evidence sought." *United States v. Beals*, 698 F.3d 248, 364 (6th Cir. 2012); *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006); *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005); *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998). A defendant's status as a drug dealer alone is insufficient to find probable cause to search the defendant's residence without other facts indicating illegal activity at the residence. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 231).  In *McPherson,* the Sixth Circuit affirmed the district court's suppression of evidence discovered during a search of defendant's residence after a pat down on the porch revealed crack on the defendant's person. Even "a high incidence of child molestation . . . may not demonstrate that a child molester is likely to possess child pornography" for purposes of establishing probable cause. *United States v. Hodson*,

543 F.3d 286, 293 (6th Cir. 2008). There must be some reliable evidence connecting criminal activity to the residence or place to be searched.

The affidavit must present information that allows the magistrate to independently determine probable cause; "his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239; *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). A conclusory affidavit is one which contains "only the affiant's belief that probable cause existed." *United States v. Finch*, 988 F.3d 349, 352 (6th Cir. 1993).

Defendant asserts that the affidavit of Special Agent Nether failed to provide sufficient probable cause for the issuance of the warrant to search the content of the cell phone. Defendant suggests the affidavit failed to establish that the cell phone belonged to Defendant (because it was not until the actual search of the cell phone that Defendant's ownership was established). The seizure of the cell phone (and, according to Defendant, the alleged probable cause) is contained in a single paragraph, number 14. *See* Dkt. No. 318, Ex. A at PgID 1604-05. Defendant maintains that paragraph alleges Defendant was arrested on August 2, 2016 at the district court in Troy on a probation violation. Ms. Rodriguez was at the courthouse with Defendant when he was "arrested" (Defendant was actually sentenced to 14 days for his probation violation), left the courthouse and entered the Caprice, which was registered

14

to Defendant. Defendant argues that there is no allegation that the phone belonged to or was even in the possession of Defendant, and the only occupant of the Caprice at the time of the traffic stop in Detroit was Rodriguez.

Defendant next argues that, while the affidavit sets forth allegations of criminal activity by the Rollin 60s Crips and notes Defendant's Indictment on July 27, 2016 (which was sealed) just days before the seizure of the cell phone, there is not a single allegation that: (1) the Rollin 60s Crips used cell phones to engage in criminal activity, (2) any of the indicted defendants communicated by use of cell phones for the purpose of engaging in criminal activity, (3) Defendant used a cell phone to engage in criminal activity. The only relevant allegation was based solely on the agent's training and experience found in paragraph 16, *id.* at PgID 1606, specifically that "members of criminal conspiracies use cellular telephones to further objectives of a gang's enterprise."

Defendant asserts that an agent's training and experience alone is insufficient. In *Carpenter*, the court found that the magistrate lacked probable cause to issue a warrant because, "Lawson's affidavit did not provide a substantial basis for the issuing judge's conclusion that probable cause existed to search the Carpenter's residence because it failed to set forth *sufficient facts* that incriminating evidence would be found *there* . . ." *Carpenter*, 360 F.3d at 595-96 (emphasis added)

15

(concluding that the facts in the affidavit did not connect the marijuana patches law enforcement found and Carpenter's residence, as they were "too vague, generalized, and insubstantial to establish probable cause").  As for the claim that an officer's training and experience can provide probable cause, the court in *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), explicitly rejected such an assertion, noting that without a factual nexus with the place to be searched, the courts would be authorizing "general warrants" based on guess-work in violation of the Fourth Amendment.

> While an officer's "training and experience" may be considered in determining probable cause, *see, e.g.*, *Texas v. Brown*, 460 U.S. 730, 742-43, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983); *U.S. v. Martin*, 920 F.2d 393, 399 (6th Cir.1990), it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity. Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose.

*Schultz*, 14 F.3d at 1098-99.

The Government counters that, in the affidavit filed in support of the warrant application, Special Agent Nether:

(a)     explained that a federal grand jury in this district had indicted Defendant for racketeering for his involvement in the Rollin 60s Crips gang. Dkt. No. 318, Ex. A at Pg ID 1604.

(b)     described the origin of the Rollin 60s Crips, both nationally and locally, its base of operations, and indicia of gang membership. *Id.* at Pg ID 1601-04.

(c)     described how the Rollin 60s Crips operate as an enterprise working to commit murders, robberies, carjackings and the unlawful trafficking of narcotics. *Id.* at Pg ID 1602-04.

(d)     explained that his involvement in other investigations of other similar criminal enterprises has made him aware of the use of cell phones to commit crimes. *Id.* at Pg ID 1599-1600.

(e)     noted that Rollin 60s Crips members frequently use cellular phones to access their social media accounts, communicate with co-conspirators, and photograph or record videos of co-conspirators and their contraband. *Id.* at Pg ID 1606.

(f)     tied the seized cell phone to his request to search it for evidence of gang-related activities and crimes. *Id.* at 1600, 1605-08.

Based on these facts, as well as Special Agent Nether's training and experience investigating gang-related criminal activities and the use of cellular phones in their commission, the Government maintains that Special Agent Nether appropriately requested permission to search the phone for evidence related to the Rollin 60s Crips' criminal activity.

The Court notes that the test for probable cause is only "reasonable grounds for belief," supported by less than prima facie proof but more than a mere suspicion. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). This is a "practical, commonsense decision" based on the totality of the circumstances, *Gates*, 462 U.S.

17

at 238, and in the case of cellular phones, "[t]he only probable cause necessary is that the phone itself is being used in connection with an offense or commonly used by someone committing the offense." *United States v. Sims*, 508 F. App'x 452, 460 (6th Cir. 2012).

The Government contends that the information in the affidavit easily satisfied that standard. The Government noted that Special Agent Nether explained the circumstances leading up to the seizure of Defendant's phone, including:

(1) how Defendant and Rodriguez traveled to the Troy District Court in a Caprice registered to Defendant.

(2) that officers watched as Rodriguez left the courthouse after Defendant's arrest and drove away in Defendant's car.

(3) how DPD officers then retrieved Defendant's cell phone from the interior of Defendant's car, along with paperwork in Defendant's name.

Dkt. No. 318, Ex. A at Pg ID 1605. As Robson testified at the hearing, when Robson advised Special Agent Brunson that there were two phones, Special Agent Robson told Robson that Special Agent Brunson was going to call a number (which the Government represents was the number it believed to be assigned to Defendant's cell phone). About that time, the cell phone on the seat (which Rodriguez did not claim and ultimately was determined to belong to Defendant) began to ring. The Government argues that those facts and circumstances provided "reasonable grounds

for belief" that the cell phone retrieved from the Caprice belonged to Defendant. *Bennett*, 905 F.2d at 934. Based on the case law, the Court must so find.

The Court finds that the affidavit also provided probable cause that Defendant's cell phone would contain evidence related to his involvement in the Rollin 60s Crips. The test is simply whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place," and Special Agent Nether's affidavit satisfies that test. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (quoting *Gates*, 462 U.S. at 238).

The Court concludes that the affidavit supplied probable cause that Defendant was personally involved in criminal activity, namely that it described his inclusion in the list of Rollin 60s Crips members indicted by the grand jury for racketeering and other criminal acts. Dkt. No. 318, Ex. A at ¶13(Pg ID 1604). The indictment returned by the grand jury is probable cause supporting his membership in the Rollin 60s Crips, as well as supplying probable cause that he committed the alleged offenses. *Kaley v. United States*, -- U.S. --, 134 S. Ct. 1090, 1097 (2014) (an indictment returned by a grand jury "conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged"); *Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) ("A recent indictment may also factor into the probable cause determination.").

19

The affidavit also tied gang activity and the offenses alleged in the Superseding Indictment to the use of cellular phones by gang members to communicate with other co-conspirators, store contact information of co-conspirators, take photographs and record videos of co-conspirators and contraband, and generally further the goals of the gang. Dkt. No. 318, Ex. A, at ¶¶ 2, 3, 12 and 16 (Pg ID 1599, 1600, 1604, 1606). The Court holds that this information provided the required nexus between the item to be searched (the phone) and the evidence sought (evidence of gang-related racketeering), which is all the Fourth Amendment requires. *Bass*, 785 F.3d at 1048–49 (finding probable cause to search a cell phone seized from the defendant where the affidavit explained that cellular phones were frequently used by the co-conspirators to call or text each other to conduct their criminal activity). *See also United States v. Gholston*, 993 F. Supp. 2d 704, 719 (E.D. Mich. 2014) (surveying cases involving the search of a cellular phone and concluding that an affidavit, in order to have probable cause, need only include sufficient facts to "support[] the inference that a search of a cell phone was likely to uncover evidence of criminal activity involving multiple participants.").

The Court further finds that the affidavit in this case tied the alleged crimes (racketeering) to Defendant (as a defendant charged in the racketeering indictment) and the phone (because it belonged to Defendant, and gangs like the Rollin 60s Crips,

20

use cellular phones to further their criminal enterprise), such that it supplied ample probable cause based on the totality of the circumstances. *Bass*, 785 F.3d at 1048–49; *Gholston*, 993 F. Supp. 2d at 720; *see also United States v. Jefferson*, No. 14-20119, 2015 WL 3576035, at **3–5 (E.D. Mich. June 5, 2015) (Edmunds, J.) (finding probable cause to search cellular phones of gang members charged with RICO).

For the reasons set forth above, the Court denies Defendant's Motion to Suppress to the extent he argues there was an absence of probable cause for issuance of the search warrant to search his cell phone.

## V.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Suppress [#318] is **DENIED**.

IT IS ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  April 7, 2017


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager